My name is Richard Brown. I am from the Western District of North Carolina, a little town right outside of Charlotte, Monroe, North Carolina, and I represent Ronald McKnight. If it pleases the court, your honors, Ronald McKnight is severely mentally challenged, or he has a severe mental illness. The two may be In that same month, at his initial appearance, the government motions the court for a psychiatric exam. The government said reasonable cause exists to believe that the defendant is incompetent. Now based upon this motion, the court orders an exam. In July of 2015, the first psychological exam was filed. Two months later, in September of 2015, the court gives a hearing and renders Mr. McKnight not competent to proceed. Did anyone request their competency exam? Yes, I believe that the government requested the initial competence exam in January. Was that the one in April of 2016? Yes. Is that the Peters report? No, the first competency exam was filed July of 2015. The hearing on it was heard in September of 2015, and then after September of 2015, it appears that they were trying to get him competent to stand trial. In April, a second psychological report was filed. That one wasn't requested. It was just stating we have him competent now. So in May, they had another hearing. The judge found him competent. He was arraigned, and he pled not guilty. Now nine months later, I'm asking whether prior to the start of the trial, there would have been the logical point to offer an objection. Prior to the start of trial, was there anybody that said, your honor, we want a competency exam? Prior to the start of the trial, the government inquired as to whether we need to talk about whether he's taking his medications before we go forward. Was there any request for a competency exam? There was no request for a competency, specifically a competency exam. So are we here on plain error? I believe we are here on plain error, your honor. So the district court would not only have had to abuse his discretion, but it would have to commit error and have it be plain error. It would be such that not to recognize it would allow a manifest injustice to occur. I mean, that's what we're asked? Well, I believe, your honor, that the court indeed committed plain error and not after it was on notice. And abused his discretion on top of it? Well, I would like to be heard on the abuse of the discretion at the appropriate time, your honor. But I think that U.S. v. Bernard, I guess, kind of starts us out on the journey of where we answer that issue here. Even when the defendant is competent, Bernard talks about at the beginning, the trial court must be alert to certain circumstances suggesting a change in to his competence. If the trial court is not alert to that when the evidence is there, I believe, your honor, that is error. What the circumstances are here that would have or should have alerted the court to his change of goal? The first thing would be that bizarre letter. And the court acknowledges that the letter was bizarre. The letter to the court stated, I want to proceed pro se because of what the prosecutor is doing to me. Not what my defense attorney is doing, but what the prosecutor is doing to me. The letter says the prosecutor is gassing myself through the air vents. And there is a conspiracy to entrap me into doing some inappropriate things so that they can charge me with a sex offense. But the biggest issue here is that the defendant admits to not taking any psychiatric medication. And we know from the reports. Which from the the most recent report, the the Kunick report, the CUNIC report, finding him competent was not contingent on appellant taking his medication, was it? Well, if the court will give me one second. Or if it was, perhaps you can point me to that. I'm looking at JA 478 where the Kunick report said that appellant's behavior waxes and wanes with or without medication. And then finds incompetent. And I would refer the court to JA 461 where it says prognosis is poor in the absence of psychiatric medication. He appears to lack significant insight into his own mental illness. And he has a need for anti-psychotic medication. Is that the Peters report or the Kunick report? That is the report filed on June 30th. The first one? Yes. I'm not talking about the first one. I'm talking about the one most recent to the trial, the Kunick report, which is not contingent upon him taking his medication and yet found him competent. In 483, in Joint Appendix 483, that report I have highlighted here reads that his recent compliance with psychiatric medication may mitigate the symptoms. I believe all alone that the people who put in the report are saying he needs psychiatric medication to remain competent. In fact, before he ends up moving forward, the prosecution actually tells the judge... I'm sorry, but how does that harmonize with what Judge Thacker said and the quotation that she gave from Dr. Kunick's report, which indicated that competency was not dependent on... Could you give me that? It is JA 478, appellant's behavior waxes and wanes with or without medication. Even with that, Your Honor, if the defendant is showing that his mindset is waning, my argument is we need to at least have a hearing here to see what's going on. And we must do that because, again, Bernard teaches us that even when the defendant may be competent at the beginning, the trial court must still be alert because he may lose competence somewhere along the way. Counsel, upon that point about a hearing and being alert, it looks like I've counted, and I've counted seven, I think, or maybe more than seven, hearings between when he's found competent on May 18th and the start of the trial. There are various hearings about the status of counsel, status conferences, hearings on the motions to withdraw, et cetera. At all of these hearings, the defendant appeared in court in front of three different judges of the Western District, and they all had the opportunity to observe his behavior, to see what his current status was, and all of them seemed to be of the opinion that they didn't need to sui sponte, have a hearing into his competency. Why should we, in our position, having never seen him, be in a position to overrule those? I believe that the telltale sign would be when the prosecution asks the court, we might need to make sure he's still on his medications before he gets started based upon these bizarre allegations that he's made. And while the allegations in and of themselves don't necessarily make him incompetent, I do believe that it is important for the court sui sponte, for the court sui sponte to look into his competence when he makes these bizarre allegations, allegations that are totally unbelievable, coupled with the fact that he has had a history of mental illness, coupled with the fact that he has, in this particular case, been deemed, at some point in time, to be incompetent. What would you have the district judge do? Appoint counsel and require him to proceed with counsel, or just to discontinue the trial? I would have the district court judge to first make an inquiry as to whether or not, not necessarily send him back to be evaluated for competence just yet, but make an inquiry on whether he's waxing or waning at the particular time. I think the court should have sui sponte done that based upon the bizarre allegations and the fact that he's not taking any medication. Well, the Koenig report found, in terms of him representing himself, that Mr. McKnight has definite ideas regarding his defense strategy and was able to articulate his strategy once and needs clearly and effectively. And then you look at the record at trial, which the district court could observe, and he did appear to have a good defense strategy, well, a losing in the end defense strategy, but a strategy nonetheless that he effectively argued to the jury. He was confident. But we're not necessarily only looking at what happened at trial, but we also have to look at whether he was competent or whether he was waxing or waning when he made the decision to move forward pro se. That decision was based upon an idea that is clearly erroneous, bizarre, the decision was because the prosecutor was gassing his cell. Therefore, I want to proceed by myself. Based upon that, I think the court should have at least taken a look at whether or not his mental mindset was waning at the time, whether or not he was taking his medications and did his medications affect his ability to make that decision in a clear and competent manner. The CUNYC report also had another sentence in there that was interesting to me, and it said that McKnight was, not only did it say it wasn't dependent upon medication, his competency, but it says McKnight was, quote, adept in negotiating sophisticated procedures to achieve specific legal goals. I think this may be the first time I've read, well, not the first time, but it's rare that I read in a competency report that someone is very sophisticated in achieving specific legal goals, which leads me to the point that bizarre behavior does not necessarily equate with incompetency to stand trial and understand the charges and present a viable defense. I think they are two different things, but the CUNYC report is pretty on point, both in its comments about medication and its use of the fact that he's adept at negotiating and sophisticated in working out his particular aims. And if I may have just a couple of seconds to respond to that, Your Honor. I think the court has to also look at the fact that that CUNYC report came out in April of 2016. In January of 2017, nine months later, he then begins to appear to And it was over a year later in June of 2017 where he proceeds pro se. No other questions within that year, no other competency hearings, no other anything to sua sponte see where he is because of his long history of mental illness. My time is up, unless you all have further questions. Well, you have some rebuttal time, Mr. Brown, and we'd be happy to hear from you then. Thank you, Your Honor. And, Mr. Enright, let's hear from you. Thank you very much, Your Honor. May it please the court, Anthony Enright for the United States. I do want to respond to Mr. Brown's point about at the FRERETA hearing, the United Prosecutor remembered, well, I thought he needed to be on medication and did make that comment and said, just so you know, Your Honor, I'll look into this after the hearing. And it's not in the record, but we did do that. And we communicated with Dr. CUNYC, and she confirmed that her opinion was that he was competent despite his intermittent compliance with medication. He had a history of that going back some 20 years. You can read in the reports, he would go off and on his medication. And what they found was he, what was persistent was he had this belief that his father was telling him to commit bank robberies. And when he took medication, sometimes that got a little better but didn't completely go away. But whether he was on medication or not, he would sort of, I think they did use the And what they did was evaluate him for about four months, looked at all of this behavior. Almost everything, pretty much everything we've talked about that occurred in court also manifested itself during that four months. He sent bizarre and totally inappropriate letters to the court. He denied any need for medication. He indulged these conspiracy theories. He made false accusations that he then retracted when he wanted to get something. Engaged in suicidal thoughts. And what the court said was, yep, he definitely has, or what the psychiatrist said, or psychologist said was, he definitely has a series of mental illnesses, but he's also got a very strong understanding of legal proceedings. He was conducting a civil proceeding. He was able to work with his defense attorney when he wanted to get something, even though he didn't particularly care for that attorney. He understood the role of the prosecutor, the judge himself. He understood the nature of the different pleas. I want to come back to a point Judge Rushing made, which I thought was highly pertinent, and that is the district judges, one of the things about the appellate process is you never get to see the parties in person. But as my colleague pointed out, the district judges, several of them, did get to observe this gentleman over a period of time in person. Yes, Your Honor. And in a case like this, doesn't that personal interaction count for something even more than it would maybe in another type of case? In other words, it bottoms out on a judgment about whether this individual can exercise his forerunner rights and the rest. And just as a matter of institutional competency, doesn't the institutional advantage really belong with the trial bench in a question like this? Absolutely, Your Honor, and this court's decision in Bernard underscores that, which is it's a question of the district court's discretion. And a critical factor is the district court's own observations. And the fact that he elected to go pro se in this means that the district court had an opportunity not just to see him sitting over with his hands folded at counsel table, but to directly interact and see how he presented himself. And you're right, Your Honor, I think there were seven different proceedings and three different judges. Because there was Judge Kerr, who handled the competency hearings, who handled the initial appearance, who handled the Feretta hearing, and who handled some inquiries of counsel. And then there was Judge Kiesler, who handled some additional proceedings, a status conference, a discussion about a plea hearing. And then there was a district judge, Judge Conrad, who handled the entire trial and watched him direct witnesses. He was very responsive to Judge Conrad. He made some of the same rookie mistakes you see a lot of pro se people make. He tried to make a speech to the jury initially. But then when Judge Conrad said, you can't do that, you've got to ask questions, he stopped doing it and he asked questions. And he also made a legal argument that he didn't rob the bank with forced violence or intimidation. Yes, Your Honor. And coupled with a sort of an insanity defense argument, because he told the jury about what you said, that he thinks he hears his father telling him to rob banks. And for that reason, he didn't mean to do it with intimidation Yes, Your Honor. I think that was the point he was very clear about making. Even in the inquiries of counsel hearings, he said, that's what I want to do. I have a serious disagreement with my attorney because, you know, they keep suggesting I plead guilty. But no, I want to tell the jury that I didn't intend to intimidate anybody. And it was not successful. And I think most of his attorneys probably saw the, maybe not such a great strategy, but he stuck to that theory. And he made it very cogently. And the Supreme Court has made abundantly clear that the competency to decide whether to represent yourself is not the same as the competency to actually be a good lawyer. But I do think it speaks highly of his ability to participate in his defense and understand the proceedings. That he did, in fact, throughout multiple proceedings, clearly understand what was going on. And when the judge instructed him on something, he was always receptive to that. Judge Conrad, he actually had one moment. Maybe the exception that proves the rule. At sentencing, he gave the prosecutor, basically, a dirty look. And the court said, it's not going to serve you well to glower at the prosecutor. And he said, you have been an absolute gentleman and respectful throughout these entire proceedings. And that was his perception after several of those. Do you have anything further to answer? Unless this court has any questions. I have one question. Could I want to ask you about the standard of review? Certainly, Your Honor. Because the statute requires that the court shall order a hearing on its own motion, can this be a plain error question, just because a motion wasn't raised, if the court has to do it sua sponte? It can be, Your Honor. I think there are oftentimes the common thing to do is to say we don't need to decide the standard of review. There are some in this circuit, I believe. I'm fairly confident that I've seen a published opinion on that. I can tell you I have an unpublished opinion in McRae, 153 Appendix 182, applying plain error to specifically the question of competence. Other circuits do. Even ones that don't apply plain error, for example, to an ordinary Feretta inquiry, like the Ninth Circuit. But it's a little bit problematic to expect someone who's incompetent to raise a competency objection, perhaps. Why wouldn't abuse of discretion be the more comfortable route? Well, I think, Your Honor, the Bernard decision actually speaks to this issue. The competency decision was made. First, there was a competency decision made initially, and there's a question of reconsideration. But the decision whether he could represent himself was made while he had counsel sitting next to him. And the court conducted the Feretta colloquy, decided that he had made a knowing involuntary waiver of that while the attorney was sitting there. And what this court held in Bernard was, when that happens, you apply the plain error standard of review to the Feretta inquiry. And once you've made the decision to represent yourself, then you're stuck with the rules, including the plain error rule. So I think that's why you would have plain error here instead of abuse of discretion. But I would underscore that the abuse of discretion standard, I think, is going to get you to the same place. Because the district- I mean, either way, it's a deferential standard. It is, Your Honor. And it's notable here, his behavior is unusual. But that letter is so- really, the only things that suggest in his interactions with the district court that there's any issue here are the kinds of things that were evaluated by a professional and without dispute found to be consistent with his competence, which the psychologist said would likely continue for the foreseeable future. So those didn't give cause for concern. Anything further? Not unless this court has any questions. Right. We do. Thank you, Judge Sackett. All right. We thank you. Thank you, Your Honor. Mr. Brown, you have rebuttal time. Thank you, Your Honor. I will not take up the seven minutes on the rebuttal. I just wanted to make a final point, because I think that the government is kind of going down a road that I don't think is the issue here. I think the government is going down the road as to whether he was competent or not, and whether there were, I guess, things in the record that may have suggested he was competent or not. I believe that the court should look at the question of not whether he was competent at the time, but whether there should have been a sua sponte inquiry based upon his past, based upon the fact that it had been almost a year since he had been evaluated, and based upon the evaluations. So I think the bigger issue here is whether the court should have, upon its own motion, made an inquiry of competence. Now, if the court did so and found that he was competent, that's one thing. But the failure to even look after the motion, the bizarre motion, the failure to look after the knowledge of it had been over, I think, a year before he went to trial, and the failure to look based upon the fact that he was not on medication is problematic for the court, not whether he was just competent or not. Other than that, Your Honors, unless the court has questions, I thank you for allowing me to argue. Well, we thank you. And I see that you're court appointed, and I want to express the appreciation of the court for your able representation. We depend on the quality of court appointed counsel to help us with our jobs, and you've assisted ably in that regard. Thank you very much, Your Honors. Thank you. We'll adjourn court and come down to Greek Council. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Allison J. Rushing